United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FREDERICK NEWHALL WOODS,

        Petitioner,

   v.

JOHN MARSHALL, Warden,

        Respondent.

_____/

No. C 03-0820 CW

ORDER GRANTING
RESPONDENT'S
MOTION FOR
SUMMARY JUDGMENT
AND DENYING
PETITIONER'S
CROSS-MOTION

Petitioner Frederick Newhall Woods has filed, pursuant to
Title 28 U.S.C. section 2254, a petition for a writ of habeas
corpus based upon alleged constitutional violations stemming
from his September 26, 2000 parole denial by the California
Board of Prison Terms (BPT).  On August 25, 2004, this Court
granted Respondent's[1] motion for summary judgment on Petitioner's
claims that the parole denial violated his rights to due process
and to be free from cruel and unusual punishment.  However, the
Court denied without prejudice Respondent's motion for summary
judgment on Petitioner's ex post facto claim and granted

_____

[1] Pursuant to Federal Rule of Civil Procedure 25(d), John
Marshall is substituted for Leslie Blanks, whom Marshall
succeeded as Warden after Petitioner filed his complaint.

**United States District Court**
For the Northern District of California

1  Petitioner additional discovery.  Respondent now renews his

2  motion for summary judgment on the <u>ex post facto</u> claim.

3  Petitioner opposes the motion and cross-moves for summary

4  judgment.  Pursuant to the Court's August 25, 2004 order, the

5  matter was taken under submission on the papers.  Having

6  considered the parties' papers and the evidence cited therein,

7  the Court GRANTS Respondent's motion for summary judgment and

8  DENIES Petitioner's cross-motion.

9                          BACKGROUND

10     In July, 1976, Petitioner hijacked a school bus, kidnaping

11  the driver and twenty-six children.  At the time of the

12  kidnaping, sentencing in California was governed by the

13  Indeterminate Sentencing Law (ISL).  In February, 1978,

14  Petitioner was convicted of twenty-seven counts of violating

15  California Penal Code section 209 (kidnaping for ransom) and

16  sentenced to serve a life sentence with the possibility of

17  parole.  Petitioner became eligible for parole on July 29, 1983.

18  Since then, the BPT has denied Petitioner parole ten times,

19  including once on September 26, 2000.  In denying Petitioner

20  parole on that date, Respondent acknowledges that the BPT

21  applied the Determinate Sentencing Law (DSL), which had been

22  enacted in 1977 to replace the ISL.

23     The DSL differs from the ISL in significant ways.  Parole

24  criteria under the ISL were developed during the sixty years of

25  its application.  <u>See</u> <u>In re Stanley</u>, 45 Cal. App. 3d 1030, 1036

26  (1976).  Notably, the ISL recognized, among other things, a

27  "prisoner's good conduct in prison, his efforts toward

28                             2

1  rehabilitation, and his readiness to lead a crime-free life in

2  society."  In re Rodriquez, 14 Cal. 3d 639, 652 (1975)

3  (superceded by statute).  "In short, a discerned and mandatory

4  objective of [the ISL] is recognition of the inmate's post-

5  conviction history and his potential for safe release as

6  indispensable considerations in parole setting."  Stanley, 45

7  Cal. App. 3d at 1038.  The ISL also considered, inter alia, the

8  nature of the prisoner's offense, the prisoner's age, prior

9  associates, habits, inclinations and traits of character.  Id.

10  at 1037.

11      Under the DSL, although its parole-suitability guidelines

12  require consideration of the same factors as were considered

13  under ISL, the stated purpose of sentencing is punishment rather

14  than rehabilitation.  Cal. Penal Code § 1170(a)(1).  The DSL

15  seeks to impose uniformity of sentences based upon the severity

16  of the offense.  Id.  Moreover, the paramount criterion in

17  considering whether to release an inmate is now public safety.

18  Id.

19      On March 26, 2003, Petitioner filed a petition for a writ

20  of habeas corpus challenging the September 26, 2000 parole

21  denial as a violation of his constitutional rights.  Petitioner

22  claimed that the parole denial violated (1) the ex post facto

23  clause of Article I, section 10 of the United States

24  Constitution; (2) the due process clauses of the Fifth and

25  Fourteenth Amendments; and (3) the Eighth and Fourteenth

26  Amendment right to be free from cruel and unusual punishment.

27      After the Court's August 25, 2004 order, only Petitioner's

28

**United States District Court**

For the Northern District of California

1  ex post facto claim remains.  Specifically, Petitioner claims

2  that the BPT violated the ex post facto clause by applying the

3  DSL at his September 26, 2000 parole hearing.  As a result of

4  the Court's August 25, 2004 order, Petitioner was granted

5  discovery of (1) his Central Office file, which the BPT

6  considered in denying his parole, (2) all documents provided to

7  the BPT between 1977 and 1979 explaining how to apply the newly-

8  enacted DSL, and (3) all decisions denying parole between April

9  15, 1974 and April 15, 1975.

10                          LEGAL STANDARD

11  I.   Habeas Corpus Review of Parole Eligibility

12       Because this case involves a federal habeas corpus

13  challenge to a State parole eligibility decision, the applicable

14  standard is contained in the Antiterrorism and Effective Death

15  Penalty Act of 1996 (AEDPA).  McQuillion v. Duncan, 306 F.3d

16  895, 901 (9th Cir. 2002).  Under AEDPA, a district court may not

17  grant habeas relief unless the State court's adjudication of the

18  claim: "(1) resulted in a decision that was contrary to, or

19  involved an unreasonable application of, clearly established

20  Federal law, as determined by the Supreme Court of the United

21  States; or (2) resulted in a decision that was based on an

22  unreasonable determination of the facts in light of the evidence

23  presented in the State court proceeding."  28 U.S.C. § 2254(d);

24  Williams v. Taylor, 529 U.S. 362, 412 (2000).  A federal court

25  must presume the correctness of the State court's factual

26  findings.  28 U.S.C. § 2254(e)(1).

27       Petitioner has exhausted his State remedies by filing a

28                                 4

United States District Court

For the Northern District of California

1   petition for a writ of habeas corpus in California Supreme

2   Court.   The court denied that petition in a summary opinion.

3   Where, as here, the highest State court to reach the merits

4   issued a summary opinion that does not explain the rationale of

5   its decision, federal court review under section 2254(d) is of

6   the last explained State court opinion to reach the merits.

7   Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).

8   In this case, the last explained State court opinion to address

9   the merits of Petitioner's claim is the opinion of the BPT.

10  II.  Ex Post Facto

11       "The ex post facto prohibition forbids the Congress and the

12  States to enact any law which imposes a punishment for an act

13  which was not punishable at the time it was committed; or

14  imposes additional punishment to that then prescribed."  Connor

15  v. Estelle, 981 F.2d 1032, 1033 (9th Cir. 1992) (internal

16  citations omitted).  "In accord with these purposes . . . two

17  critical elements must be present for a criminal or penal law to

18  be ex post facto: it must be retrospective, that is, it must

19  apply to events occurring before its enactment, and it must

20  disadvantage the offender affected by it."  Weaver v. Graham,

21  450 U.S. 24, 29 (1981).  Under the second prong, a retroactively

22  applied parole rule violates the ex post facto clause if it

23  "creates a significant risk of prolonging [the prisoner's]

24  incarceration."  Garner v. Jones, 529 U.S. 244, 251 (2000).  The

25  "significant risk" must not be speculative or ambiguous.  Scott

26  v. Baldwin, 225 F.3d 1020, 1023 (9th Cir. 2000).

27       There are two methods by which a prisoner may attack a

28                                  5

**United States District Court**

For the Northern District of California

1  parole decision under the ex post facto clause.  First, the

2  prisoner can make a facial challenge that the new rule, "by its

3  own terms, [creates] a significant risk" of increasing the

4  punishment for a crime.  Garner, 529 U.S. at 255.

5  Alternatively, the prisoner can "demonstrate, by evidence drawn

6  from the rule's practical implementation by the agency charged

7  with exercising discretion, that its retroactive application

8  will result in a longer period of incarceration than under the

9  earlier rule."  Id.

10                          DISCUSSION

11      Here, Petitioner asserts that the application of the DSL to

12  his September, 2000 parole hearing created an impermissible and

13  significant risk of prolonging his incarceration.  Specifically,

14  Petitioner argues that DSL-mandated emphases on the gravity of

15  the commitment offense and public safety had the practical

16  effect of lengthening his prison term.

17      Petitioner relies principally upon the Third Circuit's

18  ruling in Mickens-Thomas v. Vaughn, 321 F.3d 374 (3rd Cir.

19  2003).[2]  Louis Mickens-Thomas was a Pennsylvania prisoner whose

20  life sentence had been commuted by the Governor.  Like

21  California's ISL, Pennsylvania's old parole law emphasized

22  rehabilitation.  Like California's DSL, Pennsylvania's new law

23  is primarily concerned with public safety, although it does

24  mandate consideration of all factors that were considered under

25  the old law.  The petitioner became eligible for parole in 1996,

26  ─────────────────

27      [2] Petitioner also cites several unpublished opinions from
    the Third Circuit that follow the ruling in Mickens-Thomas.

28                               6

United States District Court

For the Northern District of California

1  but was repeatedly denied parole by the State's parole board.

2       The Third Circuit ruled first that the shift in the State's

3  parole laws did trigger <u>ex post facto</u> analysis because, although

4  the new parole law considers the same parole-suitability

5  criteria as the old statute, it does not provide discretion over

6  those criteria in the same manner, nor does it accord the

7  various factors the same weight.  <u>Mickens-Thomas</u>, 321 F.3d at

8  386-89.  Moving to the second prong of <u>ex post facto</u> analysis,

9  the court ruled that Mickens-Thomas was entitled to have his

10 case remanded to the parole board because he had successfully

11 shown that the new parole guidelines had resulted in a

12 significant increase in the chance of his prolonged

13 incarceration.  On this point, the court noted, <u>inter alia</u>, that

14 all 266 inmates granted commuted sentences prior to the 1996 law

15 change were paroled on their first or second application, and

16 that, based upon protocol used prior to 1996 that assigned

17 numerical values to the parole-suitability criteria, Mickens-

18 Thomas would have been recommended for parole under the old

19 guidelines.  <u>Id.</u> at 385, 390.

20      This Court acknowledged <u>Mickens-Thomas</u> in its August 25,

21 2004 order.  Moreover, Respondent posits the same argument that

22 the respondent did unsuccessfully in <u>Mickens-Thomas</u>: that the

23 first prong of <u>ex post facto</u> analysis is not satisfied because

24 the DSL requires consideration of the same criteria as were

25 considered under the ISL.  However, although the facts in

26 <u>Mickens-Thomas</u> as they relate to the history and application of

27 Pennsylvania's parole laws closely mirror those in this case,

28                                    7

**United States District Court**

For the Northern District of California

1  the Court need not reach the issue of whether it should follow

2  the Third Circuit's ruling, as Petitioner urges.  That is true

3  because, even if the Court did adopt <u>Mickens-Thomas</u>, Petitioner

4  has provided no evidence that the application of the DSL to his

5  September, 2000 parole hearing significantly increased the

6  likelihood that <u>his particular sentence</u> would be prolonged.  <u>See</u>

7  <u>Garner</u>, 529 U.S. at 255.

8       Petitioner acknowledges that the evidence he now proffers,

9  which purportedly supports his argument that BPT's use of the

10  DSL created a significant risk that his sentence would be

11  prolonged, is anecdotal.  Petitioner cites several cases under

12  the ISL in which inmates who had committed violent crimes were

13  granted parole because they exhibited some of the favorable,

14  rehabilitative characteristics that Petitioner now claims.

15  Petitioner also relies upon State-wide statistical evidence,

16  including evidence that, immediately following the enactment of

17  the DSL, the annual rate of parole-suitability findings declined

18  from approximately fifty percent of those eligible to about

19  seven percent.  The rate had declined even further by 2000.

20       It may be that, under the DSL, the BPT denies parole at a

21  significantly higher rate than it did under the ISL.  Further,

22  it may be logical to deduce that the current parole rates are a

23  direct result of the DSL's emphasis on factors, such as the

24  gravity of the commitment offense and public safety, that were

25  not so heavily weighted under the ISL.  However, Petitioner has

26  not demonstrated, as Mickens-Thomas successfully did, that the

27  retroactive application of the DSL created a significant risk of

28

a lengthier incarceration <u>in Petitioner's own case</u>.  Further, he has not provided evidence, as Mickens-Thomas did, of similarly-situated prisoners who were paroled under the ISL.  In fact, Petitioner has provided no evidence that he would have been any more likely, given the circumstances of his crime, to have been paroled under the ISL than under the current system.  At most, the evidence proffered by Petitioner supports mere speculation that the application of the DSL at his parole hearing prolonged his incarceration.  In the Ninth Circuit, that is insufficient. <u>See</u> <u>Scott</u>, 225 F.3d at 1023.  Because Petitioner has failed to make this critical showing, his <u>ex post facto</u> claim must fail.

CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment on Petitioner's <u>ex post facto</u> claim (Docket No. 51) is GRANTED, and Petitioner's cross-motion (Docket No. 52) is DENIED.  The petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 5/27/05                          /s/ CLAUDIA WILKEN
                                        CLAUDIA WILKEN
                                        United States District Judge

United States District Court
For the Northern District of California